John H. and Josephine WINTERS,
Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 83, Docket 72-1496.

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1972.

Decided Oct. 27, 1972.

John H. Winters, pro se, for appellants.

Joseph M. McManus, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, and William S. Estabrook, Tax Div., Dept. of Justice, on the brief), for appellee.

Before HAYS, OAKES and TIMBERS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States Tax Court disallowing a deduction of $2,064 paid by appellants taxpayers to an education fund established and maintained by the church to which they belong and used to support schools in which their four children were enrolled. Appellants claim that this payment amounted to a "contribution" under Section 170 of the Internal Revenue Code, 26 U.S.C. 170(c)(2)(B), and was therefore deductible. Appellants also contend that taxation of this contribution to the fund violates their First Amendment right to the free exercise of their religion. We find no merit in either contention and affirm the judgment of the Tax Court.

Appellants husband and wife are active members of the Irving Park Christain Reformed Church in Wyckoff, New Jersey. Appellants enrolled their four children in a school operated by the Eastern Christian School Association.[1] Appellants' church established a fund (Irving Park Christian Reformed Church Education Boosters) to support the schools of the Eastern Christian School Association. The fund was used exclusively for this purpose. Neither the Church nor the Association required appellants to pay tuition and appellants were under no compulsion to contribute in any way either to the Church or the fund. They were encouraged, however, to contribute and did in fact sign pledge cards indicating the amount of the payment they expected to make.

Taxpayers in 1968 claimed a charitable contribution deduction of $3,801, of which $2,064 was paid to the Irving Park Christian Reformed Church Education Boosters.[2] The Commissioner of Internal Revenue disallowed this on the ground that it was not a charitable contribution, and the Tax Court upheld this determination.

Two questions are presented for decision here: Whether the $2,064 paid by appellants to the education fund is deductible from gross income as a charitable contribution, and whether taxation of this payment infringes the appellants' right to the free exercise of their religion.

### I.

Section 170 of the Internal Revenue Code of 1954 allows a deduction for any charitable contribution, payment of which is made during the taxable year. A charitable contribution is defined to include a "contribution or gift to or for the use of . . . [a] corporation . . . or . . . fund . . . organized and operated exclusively for religious . . . or educational purposes. . . ." 26 U.S.C. 170(c)(2)(B). Of course, not every contribution to a fund or corporation operated exclusively for religious or educational purposes is deductible. "A [contribution] in the statutory sense . . . proceeds from a 'detached and disinterested generosity,' Commissioner of Internal Revenue v. Lo Bue, 351 U.S. 243, 246, 76 S.Ct. 800, 100 L.Ed. 1142." Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960),[3] and not from the anticipation of economic benefit. Consequently tuition payments are not deductible because the donor expects, and in fact receives, a definite economic benefit. In the instant case, appellants argue that their payments to the Irving Park Christian Reformed Church Education Boosters did not constitute tuition because the payments were not required. Appellants' children could attend the schools operated by the Eastern Christian School Association even if appellants contributed no money to the fund. However, the mere absence of a legal obligation to make a payment does not establish that such a payment constitutes a charitable contribution and is therefore deductible. In Dejong v. Commissioner of Internal Revenue, 309 F.2d 373 (9th Cir. 1962), a tax-exempt corporation was organized solely for educational purposes —to maintain a school in which students could obtain religious as well as general instruction. No tuition was charged, but as in the instant case, parents of the students were encouraged to contribute to the school. Also as in the instant case,

---

1. The Eastern Christian School Association is a tax-exempt corporation whose purpose is to establish and maintain schools with a curriculum compatible with the tenets of appellants' faith.

2. Only the $2,064 was contested. Deduction of other contributions to the Christian Reformed Church was allowed.

3. In *Duberstein*, Section 170 of the Internal Revenue Code was not involved. Instead, the Court was concerned with what constituted a gift under Section 102 of the Code. However, the *Duberstein* definition of gift has been applied to Section 170. See, e. g., Dejong v. Commissioner of Internal Revenue, 309 F.2d 373 (9th Cir. 1962).

the parents signed pledge cards for such contributions. The Ninth Circuit held that the contributions were induced in substantial part by the benefits which the parents anticipated from the enrollment of their children and should be considered tuition payments. The First Circuit has recently reached the same result. Oppewal v. Commissioner of Internal Revenue, 1972. We agree with the decisions of the First and Ninth Circuits. Clearly here, as in *Dejong* and *Oppewal*, the parent taxpayers both anticipated and received substantial benefits from their payments; the payments did not come from a "detached and disinterested generosity." Commissioner of Internal Revenue v. Duberstein, *supra*. Instead, the record shows that the taxpayers' payments were made with the anticipation of economic benefit. The record indicates that the appellants realized that they had to pay in order to keep the schools in operation and that the amount of their contributions to the education fund was determined, at least to some extent, by what they believed to be the cost of educating their children.

Appellants rely on Marshall v. Welch, 197 F.Supp. 874 (S.D.Ohio 1961) for the proposition that there can be a deduction even where the donor has received a direct benefit. However, in *Marshall* there was no evidence that the parents of the patients were expected, much less encouraged, to contribute to the Home. In the instant case, there is substantial evidence that the parents were expected to contribute to the Education Boosters.

Congressional treatment of non-mandatory contributions to parochial schools also points to the conclusion that the contributions are not deductible. Since Congress has recently considered a number of bills which would have created the deduction which appellants seek,[4] it would appear that Congress did not contemplate that such contributions would be deductible under the presently existing statutes.

We therefore affirm the Tax Court's holding that the payments in question constituted tuition and were nondeductible family expenses.

## II.

■■ Taxpayers appellants also contend that the denial of the deduction infringes their constitutional right to the free exercise of their religion. This contention is without merit. It is firmly established that benefits to taxpayers such as deductions for contributions to charitable organizations, are matters of legislative grace; there is no constitutional right to a tax deduction. First Nat. Bank & Trust Co. in Macon, Ga. v. United States, 115 F.2d 194 (5th Cir. 1940).

■ Congress clearly has the power to withhold deductions without violating the First Amendment guaranty of the free exercise of religion. Parker v. Commissioner of Internal Revenue, 365 F.2d 792, 795 (8th Cir. 1966), cert. denied, 385 U.S. 1026, 87 S.Ct. 752, 17 L.Ed.2d 674 (1967). As the Supreme Court said in Cammarano v. United States, 358 U.S. 498, 513, 79 S.Ct. 524, 533, 3 L.Ed.2d 462 (1959):

"Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code."

Affirmed.

4. E. g., H.R. 873, 88th Cong., 1st Sess. (1963); H.R. 454, 89th Cong., 1st Sess. (1965).